IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 2:12cr188-MHT |
| CHARLES DEAN PARTIN | ) | (WO) |

OPINION AND ORDER

Defendant Charles Dean Partin is charged with transporting a minor across state lines for purposes of committing aggravated statutory rape in violation of 18 U.S.C. § 2423(a) and transporting a stolen motor vehicle across state lines in violation of 18 U.S.C. § 2312.  The court previously appointed a guardian ad litem to represent the interests of the minor who is the alleged victim of Partin's conduct.  This cause is now before the court on the guardian's motion for the minor to give testimony at Partin's trial from a place other than the courtroom through two-way closed-circuit television.

Under 18 U.S.C. § 3509(b)(1)(B), such out-of-courtroom testimony may be given if the court finds that the minor is unable to testify in open court in the

presence of the defendant for any of four reasons: (1) fear by the minor; (2) there is a substantial likelihood, established by expert testimony, that the minor would suffer emotional trauma from testifying; (3) the minor suffers a mental or other infirmity; or (4) conduct by the defendant or defense counsel causes the child to be unable to continue testifying.

In order for this court to decide whether any of those § 3509(b)(1)(B) factors are present, the guardian asked this court to hold an evidentiary hearing in which she and attorneys for the government and Partin, but not Partin himself, would be present.  Partin's attorney objected, contending that Partin himself should be present at the hearing.  Therefore, the issue presently before the court is what procedures should be used for this court to make the § 3509(b)(1)(B) determination, and in particular, what degree of participation the defendant should have.

I.

A.

The statute, 18 U.S.C. § 3509, provides little guidance with respect to how a court should proceed in a § 3509(b)(1)(B) hearing.  In that respect, it states only: "In determining whether the impact on an individual child of one or more of the [§ 3509(b)(1)(B) factors] is so substantial as to justify [ordering two-way closed-circuit television testimony], the court may question the minor in chambers, or at some other comfortable place other than the courtroom, on the record for a reasonable period of time with the child attendant, the prosecutor, the child's attorney, the guardian ad litem, and the defense counsel present."  18 U.S.C. § 3509(b)(1)(C).[1]

_____

1   The statute does not define the term "child attendant."  It does define the term "adult attendant" as "an adult described in subsection (i) who accompanies a child throughout the judicial process for the purpose of providing emotional support."  18 U.S.C. § 3509(a)(1). Subsection (i) refers, confusingly, to both an "adult attendant" and a "child attendant."  18 U.S.C. § 3509(i). Read in the context of this statute, the court finds that the term "child attendant" is used interchangeably with
(continued...)

Although "the defendant" is conspicuously absent from that list, the use of the word "may" ("the court may," 18 U.S.C. § 3509(b)(1)(C)) would seem to indicate that the court has discretion in this regard.  Turning to case law is no more helpful, as it appears that no written decision has yet explored the procedures courts should use in § 3509(b)(1)(B) hearings and what degree of participation the defendant should be afforded.  As the statute itself and existing case law provide little guidance, the court turns to the substantive rights and interests involved.

### B.

The court's decision in this case is guided by an analysis of the relevant background values and constitutional principals.   The Sixth Amendment's

---

1(...continued)
the term "adult attendant" and was intended to have the same meaning.   See United States v. Samuel M., 2013 WL 2284967 at *3 (D.N.M. 2013) (Browning, J.) (using the terms interchangeably in the context of a § 3509 hearing).

Confrontation Clause provides that, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]he Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Maryland v. Craig, 497 U.S. 836, 844 (1990) (internal quotation marks omitted). The clause "reflects a preference for face-to-face confrontation at trial," id. at 849 (emphasis removed), because "[t]he simple truth is that confrontation through a video monitor is not the same as physical face-to-face confrontation.... [T]he two are not constitutionally equivalent." United States v. Yates, 438 F.3d 1307, 1315 (11th Cir. 2006) (citation omitted). However, "that preference must occasionally give way to considerations of public policy and the necessities of the case." Craig, 497 U.S. at 849. Thus, if the court finds that it is "necessary to protect the welfare of the particular child witness who seeks to testify," the "interest in

protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." Id. at 855.

Thus, in considering the Confrontation Clause, courts must balance two competing interests. On the one hand, the defendant's interest in in-court face-to-face confrontation is an important constitutional right that should not be abridged lightly. Even if the "Sixth Amendment's guarantee of the right to confront one's accuser" is not entirely undermined by the use of the two-way closed-circuit television testimony at trial, it is nevertheless "most certainly compromised." Yates, 438 F.3d at 1315. On the other hand, the interest in avoiding unnecessary trauma to the minor is obviously "a compelling one." Craig, 497 U.S. at 852 (internal quotation marks omitted).

The court does not mean to imply that the
Confrontation Clause grants rights to the defendant at
the § 3509(b)(1)(B) hearing itself.  There is authority
indicating that the clause does not.  *See, e.g.*, *United
States v. Harris*, 458 F.2d 670, 677-78 (5th Cir. 1972)
("There is no Sixth Amendment requirement that
[defendants] ... be allowed to confront [witnesses] at a
preliminary hearing prior to trial");[2] *United States v.
Mitchell-Hunter*, 663 F.3d 45, 51-2 (1st Cir. 2011)
(collecting cases).  The issue before the court is one of
interstitial statutory interpretation (that is, filling
in the blanks in an incomplete statutory scheme).  The
nature of the defendant's Confrontation Clause trial
right is an underlying factor that illuminates what
statutory law requires of a hearing under

_____

        2  The Eleventh Circuit has adopted as precedent all
decisions of the former Fifth Circuit rendered prior to
October 1, 1981, and all Former Fifth Circuit Unit B and
non-unit decisions rendered after October 1,1981.  *See*
*Stein v. Reynolds Secur., Inc.*, 667 F.2d 33, 34 (11th
Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206,
1207 (11th Cir. 1981)(en banc).

§ 3509(b)(1)(B), that is, the hearing to determine how
the defendant's Confrontation Clause rights will be
enforced at the trial itself.  In light of these general
considerations, the court will determine what procedures
are appropriate for the § 3509(b)(1)(B) hearing.


C.

As an initial matter, it seems apparent that the
court should not stray too far in protecting either the
defendant's interests over the minor's or the minor's
over the defendant's.  On one end of the spectrum, an
evidentiary hearing in which the defendant is present
throughout the full questioning of the minor could fail
to take adequately into account the minor's interests.
Indeed, that approach could subject the minor to exactly
the kind of harms that § 3509(b)(1)(B) seeks to prevent.
On the other end of the spectrum, an evidentiary hearing
in which the defendant is not present and has no
knowledge of the content of the proceedings could fail to

8

adequately protect his interests.   As an individual facing criminal charges, those interests are weighty indeed.   This court finds that the best procedure for protecting the rights of both the minor and the defendant is somewhere in the middle, as follows:

The evidentiary hearing to determine whether any of the § 3509(b)(1)(B) factors are present in this case will be held in the ordinary courtroom.[3]   The courtroom will be closed to the public throughout the entire hearing for purposes of limiting unnecessary embarrassment to the minor.   Permitted inside the courtroom will be the ordinary court personnel, the guardian, counsel for the government, defense counsel, and the testifying witness.[4]

---

3   In other cases, taking testimony from the minor "in chambers, or at some other comfortable place," 18 U.S.C. § 3509(b)(1)(C), may be appropriate.   In general, taking that testimony in the courtroom is preferable because it best allows the court to observe how the minor may react at trial itself.   Taking the minor's testimony elsewhere should be done only where there is a preliminary showing that doing so is necessary to protect the interests of the minor.

4   If the witness is the minor, she may be
(continued...)

During the testimony of any witness other than the minor, the defendant will also be present in the courtroom.

During the testimony of the minor, if she testifies, the defendant himself will not be present in the courtroom. Before, after, and during breaks in the proceedings, court personnel, counsel for the government and the defense, and the guardian should ensure that the defendant's movements inside the courthouse are such that he does not come into contact with the minor in the hallways or elsewhere. During the minor's testimony, the defendant will be in another room of the courthouse and he will be afforded a cellular telephone to communicate with his counsel in the courtroom. However, if counsel for the parties or the guardian would prefer another means of electronic audio communication, the court will entertain other suggestions. The courtroom and the defendant's room will have closed-circuit television

_____

4(...continued)
accompanied by an attendant who is not participating in any other capacity in the trial. See 18 U.S.C. § 3509(a)(1), (i); supra note 1.

access with the camera directed at the witness stand so as to allow the defendant to view and hear the minor giving testimony.

The next question is whether the minor should be able to view the defendant during her testimony in the § 3509(b)(1)(B) hearing, or put another way, whether the closed-circuit television should be one- or two-way. The answer to that question should depend on the circumstances of the case, including the age and maturity of the minor, the nature of the allegations, and any other relevant circumstances. In some cases, the minor's trauma may be so severe that even facing the defendant through two-way video would seriously exacerbate the minor's anguish, and protecting the minor's well-being may warrant one-way closed-circuit television that allows the minor to avoid any visual image of the defendant at all. However, the court has a strong preference for two-way video, as it better protects the defendant's

interests.[5]  If the guardian prefers for this court to use one-way video during the § 3509(b)(1)(B) hearing, she must make her request within three days of the filing of this order with a motion and supporting affidavits or other evidence showing that the minor's individual circumstances warrant one-way video testimony.  <u>Cf.</u> <u>Craig</u>, 497 U.S. at 855 (permitting one-way testimony upon a showing of necessity, but noting that "the requisite finding of necessity must of course be a case-specific one").  If no such adequately supported motion is made, the hearing will proceed with two-way video testimony.

---

     5  Again, while the Confrontation Clause may not directly apply to the evidentiary hearing, cases decided under the clause do offer guidance regarding the importance of both the defendant's being able to see the witness <u>and</u> the witness's being able to see the defendant.  <u>See</u> <u>Coy v. Iowa</u>, 487 U.S. 1012, 1019 (1988) ("A witness 'may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is.'") (quoting Z. Chafee, The Blessings of Liberty 35 (1956)). "That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser." <u>Id</u>.

If the court allows one-way video testimony, it seems sensible that the minor should be aware that there is a camera on her and the defendant is viewing the proceedings.  If the guardian has reason to believe that the minor should not be so aware, the guardian should inform the court of that in her motion for one-way video testimony.  The court will carefully consider the guardian's views in this regard.

If, through these procedures, the court does not find the evidence presented at the hearing sufficient to establish one or more § 3509(b)(1)(B) factors, the court may, depending on the circumstances, wish to bring the defendant into the courtroom so the court can view the minor give testimony in his actual presence before making a final determination that none of the factors is present.  In other words, prior to deciding that the defendant may be present during the minor's testimony at trial, the court may conduct a "trial run" during the § 3509 hearing.  The goal of that trial run would be to

13

limit the possibility of an erroneous initial determination that the court would need to revisit at trial. <u>Cf.</u> <u>United States v. Rouse</u>, 111 F.3d 561, 568 (8th Cir. 1997) (noting that trial court initially determined at pretrial hearing that the minor witnesses could testify in the presence of the defendant and then reversed that ruling at trial after it became apparent that they could not). If the minor is, in fact, unable to testify in the presence of the defendant, it is better for both the minor and the defendant to have that revealed at the § 3509(b)(1)(B) hearing than at trial itself. For the minor, it limits embarrassment: Relatively few people will be present in the closed-to-the-public courtroom during the § 3509(b)(1)(B) hearing, while more may be during the potentially open-to-the-public courtroom during trial. <u>See</u> 18 U.S.C. § 3509(e) (listing limited circumstances under which the courtroom may be closed at trial to protect the minor). For the defendant, it avoids possible unfair prejudice: If the

14

jury were to see the judge make a decision to take the minor out of the courtroom to give testimony from afar, it might infer that the judge had personally concluded that the defendant had victimized the minor. It is important to mitigate that risk to the extent possible.

The court reiterates that, it is only after viewing all other evidence presented at the hearing and finding that none of the § 3509(b)(1)(B) factors has been shown should the court bring the defendant into the courtroom to make a final determination. Until that occurs, the minor should not cross paths with the defendant. Lastly, regardless of what determination is made at the hearing, the decision should be without prejudice for reevaluation at trial if circumstances appear different than anticipated. See Rouse, 111 F.3d at 568.

Following these procedures, the court may make a § 3509(b)(1)(B) determination without unnecessarily causing trauma to the minor while still allowing the defendant to participate meaningfully, thus protecting

15

both the minor's and the defendant's competing interests. But, while these procedures seem best for the case at hand, and hopefully will offer useful guidance for future cases, they may not be appropriate in other cases in which circumstances differ.


## II.

Although the issue of how the two-way closed-circuit television testimony should be given at trial if this court finds one or more § 3509(b)(1)(B) factors is not now before the court, the court, in the interest of providing guidance to counsel on an underdeveloped area of law, here offers some preliminary thoughts.

First, it seems apparent that, if the court orders out-of-court video testimony, in no event should the jury be told the basis for the court's ruling, that is, that the minor is afraid of the defendant or will be traumatized if made to testify in front of him. Again, allowing the jury to infer that the judge is convinced of

16

the alleged abuse may cause irreparable unfair prejudice
to the defendant's case.  Counsel should be prepared at
the evidentiary hearing to discuss how best to avoid this
risk.

One possibility to avoid prejudicing the jury might
be for the minor could give testimony from another
courthouse in this district (for example, since this
trial will be held in the Montgomery courthouse, the
minor, because she resides near Dothan, Alabama, could
give testimony from this district's Dothan courthouse)
and the judge could inform the jury that the witness is
in the other courthouse but say no more.  The defendant
and counsel for both sides would remain in the trial
courthouse (in this case, in Montgomery).  In those
circumstances, the jury may infer simply that the
electronic testimony is a result of distance and
transportation related issues.

However, the court notes that such an arrangement
raises a potential problem.  Section 3509(b)(1)(D)

provides that "the attorney for the Government and the attorney for the defendant ... <u>shall</u> be present in a room ... with the child." 18 U.S.C. § 3509(b)(1)(D) (emphasis added). If counsel prefer this option, they should be prepared to argue at the evidentiary hearing whether it violates § 3509(b)(1)(D) and, if so, whether that provision is waivable.

Second, a related concern is what sort of room the minor should be in, whether a courtroom or something else. If the room is overly comfortable, the jury may infer that the court is affording the minor special treatment as a victim, and thus that the court believes the defendant to be guilty. Counsel should be prepared to discuss this issue at the evidentiary hearing as well.

The court reserves judgment on these issues until they properly come before it and only provides these thoughts as guidance for counsel's consideration. Counsel should consider these issues and others in light of the principles discussed in this opinion, that is, how

the court can best respect the rights of both the minor and the defendant.

***

Accordingly, it is ORDERED that:

(1) The guardian ad litem's motion for two-way closed-circuit television testimony at trial (Doc. No. 127) is set for an evidentiary hearing, to proceed in accordance with this opinion, on December 17, 2013, at 10:30 a.m. at the Frank M. Johnson, Jr. United States Courthouse Complex, Courtroom 2FMJ, One Church Street, Montgomery, Alabama.

(2) The guardian ad litem may file, on or before December 13, 2013, a motion for one-way, rather than two-way, closed-circuit television testimony at the evidentiary hearing. If no such motion is filed by that date, the hearing will use two-way video.

(3) The clerk of court is to provide for the necessary accommodations to effectuate this order.

19

Counsel are to contact the relevant court personnel to make the necessary arrangements.

(4) Counsel should be prepared at the hearing to discuss the questions raised above, that is, if this court finds that trial testimony should be given through two-way closed-circuit television, what are the mechanics of that procedure, including where the minor will be located, who will be in the room with her, and what the jury will be told about the arrangement.

DONE, this the 10th day of December, 2013.


   /s/ Myron H. Thompson   
UNITED STATES DISTRICT JUDGE